IN THE UNITED STATES DISTRICT COURT  FOR
THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **LATICIA THONSGAARD AND** | ) | |
| **JAKE THONSGAARD,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:_____** |
| | ) | **(JURY TRIAL DEMANDED)** |
| **TRISTAR PRODUCTS, INC.,** | ) | |
| **Defendants.** | | |

## PLAINTIFFS'S ORIGINAL COMPLAINT AND JURY DEMAND

**COME NOW** Plaintiffs, Laticia Thonsgaard and Jake Thonsgaard, by and through

undersigned counsel, and for their complaint against the Defendants, represents unto this Honorable

Court as follows:

### I.  PARTIES, JURISDICTION AND VENUE

1.      Plaintiffs, Laticia Thonsgaard and Jake Thonsgaard (hereinafter "Plaintiffs"), are

residents of Liberty County, Texas.

2.       Tristar Products, Inc. ("Defendant" or "Tristar"), is a foreign corporation,

incorporated under the laws of the State of Pennsylvania, principally located in Fairfield, New

Jersey, and doing business in all fifty states, including Texas. At all times relevant, Defendant

Tristar substantially participated in the design and manufacture and solely promoted and sold the

"Power Pressure Cooker XL," model number PPC790 (the "Pressure Cooker") which caused

Plaintiffs' injuries and damages.  At all times relevant, Defendant Tristar promoted, via television,

internet and otherwise, the Pressure Cooker to be sold in all fifty states, including Texas.

Defendant may be served with process by serving the Texas Secretary of State at 1019 Brazos

Street, Austin, Texas, as its agent for service, because Defendant engages in business in Texas but

1

does not maintain a regular place of business in Texas or a designated agent for service of process in Texas. Pursuant to TEX. CIV. PRAC. & REM. CODE § 17.044, service of citation on this Defendant may be accomplished by serving the Secretary of State of Texas, who will then forward the citation by certified mail, return receipt requested, to its registered agent for service of process, The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

3.      Jurisdiction is proper in the Court pursuant to 28 U.S.C. § 1332(a), because the Plaintiffs and Defendant Tristar are citizens of different states, and the amount in controversy exceeds $75,000, excluding interests and costs.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(a)(2), as a substantial part of the events, acts or omissions giving rise to the claim and Plaintiffs' injuries occurred within this District, and the Defendant regularly conducts business in this District, including the promotion, sale and distribution of the Pressure Cookers in this District.

## II. <u>FACTS</u>

5.      On or about September 30, 2017, Plaintiff Laticia Thonsgaard's mother purchased a Tristar Power Pressure Cooker XL (hereinafter "Pressure Cooker") to give to Plaintiff as a Christmas gift.  She made the purchase after she and Plaintiff had viewed Defendant's "infomercial" promoting the product to ordinary users and consumers, such as the Plaintiffs.  They viewed these commercials in Liberty County, Texas.  Defendant shipped the Pressure Cooker to Plaintiff's mother in Liberty County, Texas, and Plaintiffs' mother gave the Pressure Cooker to Plaintiff, also in Liberty County, Texas.

6.      Pressure cookers (generally) are electric kitchen appliance ostensibly designed and sold for efficient food preparation using pressure inside the unit.

7.      Defendant's Pressure Cooker (the unit at issue) purports to be a "PPC790" (a ten-quart unit), which was manufactured in China by Zhongshan Jinguang Appliance Manufacture

2

Company, Ltd. (a/k/a "Blossom") (hereinafter "Jinguang"), sold to Cheer Master, a third-party vendor, purchased by Defendant Tristar, and then shipped to the United States for sale by Defendant Tristar.

8.      Defendant also sells other pressure cooker devices under the "Power Pressure Cooker" or "PPC" line of pressure cookers, including the "PPC780" (eight quart), and "PPC770" (six quart). The PPC770, and PPC780 are also manufactured by Jinguang.

9.      All of the aforementioned pressure cookers are identical in design and function. Each of the PPC line of pressure cookers is designed and constructed with the exact same system to allow pressurization and depressurization of the units, including but not limited to the manual release valve, independent floating valve, locking pin, strike plate silicone gasket, and locking lugs.

10.      Defendant also sells other model pressure cookers, including but not limited to the "PC-WAL1", "PC-WAL2", "PC-TRI6", "PCXL-PRO6", and the "Manual YBD60-100", and each model is substantially similar in design and function to the PPC line of pressure cookers.

11.      Prior to selling the subject Pressure Cooker, Defendant directly supervised and participated in the manufacturer's testing of its pressure cookers in China.  Such testing included "reliability" and "validation" testing, which included testing pressurization and depressurization, valve clog tests, drop tests, functional and cycle testing. Moreover, Defendant directly supervised and participated in additional tests conducted by Cheer Master, including functional tests, "partially-locked" pressurization testing and "fully- locked scenario" testing, at the manufacturer's facility in China.

12.      At all times relevant, Defendant was responsible for approving any design changes to its pressure cookers via "Supplier Engineering Change Request" or "ECR".

13.      The PPC series, including the subject Pressure Cooker, is designed such that the unit cannot pressurize until the lid is secured in a "locked position," thereby allowing the float

valve to rise and secure the pressure inside the unit. Moreover, the float valve, when engaged, is designed to interact with the strike plate and locking pin, thereby preventing the lid from being removed under pressure. Defendant's representatives have admitted that the Pressure Cooker is defective if it can be pressurized without the lid being secured in locked position or if the lid of the unit can be removed under pressure.

14.    The only way a user or consumer can know that Defendant's pressure cooker, including the subject Pressure Cooker, has depressurized and thus the lid safe to be removed, is to wait until steam ceases to be seen exiting the unit's manual release valve which, is designed to be incapable of clogging.  Defendant's Pressure Cooker is defective if the manual release valve were to become clogged since the cooker is designed to prevent clogging of the release valve.

15.    According to the Defendant's advertisements, promotions, and user's manual, Defendant's Pressure Cooker is "the safest" and "easiest to use" Pressure Cooker on the market because it was designed to include a number of "Built-In Safety Features," including, but not limited to:

      a.    "Lid Safety Device" that "prevents pressure build-up if the lid is not closed" and "prevents lid from opening until all pressure is released,"

      b.    "'Clog Resistant' Feature:" that "prevents food from blocking the steam release port" and,

      c.    "'Spring Loaded' Safety Pressure Release:" that in the event of failure of all other safety features, "will automatically lower the Inner Pot, causing it to separate automatically from the Rubber Gasket" to "enable the steam and pressure to automatically escape around the lid, avoiding a dangerous condition."

Moreover, in the "Frequently Asked Questions" section of the owner's manual, the question "WHY WOULD THE LID COME OFF WHEN IT SHOULDN'T?" is answered as follows: "***It should only come off if there was no pressure inside***."  (Emphasis added).  Defendant's Pressure Cooker also

includes a "CAUTION" label affixed to the unit itself. The label includes a diagram/model of a "Pressure Valve" with instructions regarding how to manually turn it to "seal" (pressurize) and "vent" (depressurize) the unit.The label then states, "Once the Floating Valve has dropped, the Lid may be removed." However, neither the label nor the owner's manual accompanying the Pressure Cooker include a diagram, description, or any other means of identifying the "Floating Valve," which is an internal component not readily apparent to ordinary users and consumer.

16.    Prior to July 9, 2019, Plaintiffs had separately viewed the same or similar "informercial" as Plaintiff's mother, in which Defendant expressly warranted and represented that its Pressure Cookers were safe and easy to use.

17.    Prior to July 9, 2019, Plaintiffs had read the user's manual which included Defendant's above-quoted representations regarding the Pressure Cooker's alleged "Built-In Safety Features."

18.    Prior to July 9, 2019, Plaintiffs had operated the Pressure Cooker, including preparing food items to be cooked, placing them in the Pressure Cooker, adding liquid, securing the lid, turning the pressure release valve to release the pressure at the conclusion of the cook cycle, and, thereafter, removing the lid; all without incident.

19.    On or about July 9, 2019, Plaintiffs and Plantiff's mother endeavored to heat Gumbo at their home in Liberty, Texas, and decided to use the Pressure Cooker, among other things, for that purpose, as she had seen previously on Defendant's informercial and pursuant to Defendant's express warranties and representations made therein. Plaintiffs understood the general operation of the Pressure Cooker and specifically relied on Defendant's representations and express warranties that the Pressure Cooker would not pressurize without its lid being closed and that the lid could only come off if there was no pressure inside. Moreover, prior to their use of Defendant's Pressure Cooker, Plaintiffs had read the label affixed to the unit, including the instructions thereon.

Relying upon Tristar's express warranties and representations regarding the safety of the Pressure Cooker, and the instructions affixed to the label on the unit, Plaintiffs reasonably believed that the PressureCooker would not pressurize without its lid being closed and that the lid should only come off if there was no pressure inside. Consequently, Plaintiffs used the Pressure Cooker to prepare food items (gumbo) in a manner intended and instructed by the Defendants. That is, Plaintiff's mother placed the proper amount of gumbo in the Pressure Cooker, placed the lid on the unit and turned it until she heard a "click" indicating it was locked, and then pressed the unit's button to start the cooking (pressurization) process. At the conclusion of the cook cycle (a numerical countdown), the Pressure Cooker emitted a sound (electronic "beep" or "ding") indicated that the food was cooked. Plaintiff then turned the pressure release valve to release the pressure, as per Defendant's instructions on the Pressure Cooker, at which time the unit emitted a "hissing" or "whistling" sound indicatingthe pressure was being released. After the hissing/whistling stopped, she waited a few minutes (while attending other food items they were preparing) and then attempted to remove the lid of the Pressure Cooker. She had slippery hands, and the countertop was slippery, so she asked her son, Plaintiff Jake Thonsgaard, to open the cooker while she held the base on the countertop. As he turned the lid, the lid suddenly and without warning exploded from the unit, causing the heated contents of the Pressure Cooker (food items and liquid) to spew violently onto their chests, arms, and legs, resulting in severe, painful burns which necessitated medical treatment. As a result of the incident, Plaintiffs both continue to suffer from permanent scarring and skin discoloration. As a further result of the incident, Plaintiffs both were caused to miss work and lose wages during the course of their medical care and treatment and thereafter.

20.    Unbeknownst to the Plaintiffs at the time of their use of Defendant's Pressure Cooker, Defendant had previously received (and was contemporaneously receiving) numerous reports of serious personal injury (chiefly serious burns) and property damage resulting from

similar incidences of Defendant's Pressure Cooker lids exploding from the units while under pressure.

21.    Unbeknownst to the Plaintiffs at the time of their use of Defendant's Pressure Cooker, Defendant was actively engaging, supervising over, and participating with Jinguang to make a number of design changes to Defendant's Pressure Cookers as a result of reports of lid explosions under pressure.

22.    Despite its knowledge of its defects, Defendant failed to recall, halt, hold, or otherwise alter the sales of its Pressure Cookers but instead continued to push Jinguang to produce more units and did nothing to warn consumers of the danger.

### III.    CAUSE OF ACTION:  NEGLIGENCE

23.    Plaintiffs incorporate the facts and allegations explained above as if fully set forth herein.

24.    Defendant was negligent in developing, designing, testing, selling, and/or marketing the cooker.

25.    At all times material hereto, the cooker was being used by Plaintiffs for the foreseeable intended purposes for which it was developed, designed, manufactured, tested, sold, and/or marketed.  Plaintiffs were foreseeable intended users of the cooker.

26.    Defendant owed a duty to Plaintiffs to use reasonable care in developing, designing, testing, selling, and/or marketing a product free from defects in material or workmanship that was safe and functional for consumer use and did not pose a foreseeable risk of harm to consumers. Defendant failed to exercise such reasonable care.

27.    Defendant owed a duty to Plaintiffs to adequately warn of the dangers inherent in the use of the product it developed, designed, tested, sold, and/or marketed.  Defendant failed to adequately warn consumers of the dangers inherent in its product that is the subject of this suit.

28.     Plaintiffs' injuries and damages are the direct and proximate result of the Defendant's negligence, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent authority.

29.     Plaintiffs' injuries and damages are not due to any act or failure on the part of Plaintiffs.

30.     Defendant was negligent in one or more of the following respects:

a.      Failing to take appropriate steps to ensure the cooker could not explode;

b.      Failing to conduct an appropriate inspection of the cooker;

c.      Marketing, selling, and shipping the cooker in an unsafe condition;

d.      Failing to provide users of the cooker with adequate instructions for its safe use;

e.      Failing to provide users of the cooker with adequate warnings concerning its use;

f.      Failing to thoroughly and adequately test the cooker to ensure that the lid could not be discharged from the cooker in the course of cooking;

g.      Designing and/or selling the cooker with the capacity to pressurize and reach a high temperature even if the lid was only partially engaged;

h.      Failing to equip the cooker with properly functioning safety features which would prevent the lid from opening while contents were under pressure;

i.      Failing to equip the cooker with properly functioning safety features which would prevent the cooker from operating when the lid was not fully sealed;

j.      Failing to prevent damage to, or sticking, or malfunction of, the cooker's safety
features;

k.      Failing to provide a safe, appropriate, and effective mechanism for securing the lid of the cooker;

l.      Designing the lid and housing in such a way that it is not apparent to the user that

the lid is not fully sealed;

m.    Failing to design the cooker with a warning mechanism that would allow a user to recognize that the lid was not fully sealed;

n.    Failing to discover defects in, and the dangerous condition of, the cooker;

o.    Failing to remedy the defects in, and the dangerous condition of, the cooker;

p.    Failing to discover defects in, and dangerous inadequacies of, the instructions and warnings provided with the cooker;

q.    Failing to properly test, evaluate, inspect, and assemble the cooker;

r.    Failing to properly design, test, and advertise the cooker to ensure that it was not unreasonably dangerous;

s.    Failing to warn the public in general, and Plaintiffs in particular, of the dangers presented by the use of Defendant's product;

t.    Failing to exercise due care and act with regard for the safety of those using its products; and

u.    Such other and further acts and/or omissions as may be shown by the evidence at the trial of this cause.

31.    Each of the above-listed acts and/or omissions, taken singularly or in combination, was a proximate cause of Plaintiffs' injuries and damages.  The above and foregoing acts and omissions of Defendant constitute negligence, which was the proximate cause of Plaintiffs' resulting injuries and damages.  Nothing Plaintiffs did or failed to do caused or contributed to cause the occurrence made the basis of this suit.

### IV.  CAUSE OF ACTION:  STRICT LIABILITY

32.    Plaintiffs incorporate the facts and allegations explained above as if fully set forth herein.

33.    Defendant is the designer, distributor, and/or seller of the cooker.

34.    The cooker was sold and delivered to Plaintiffs.   At all times prior to delivery, the

cooker was in the exclusive control of Defendant, its agents, servants, employees, and/or apparent agents, and was delivered to Plaintiffs without substantial change in its condition.

35.     The cooker was used by Plaintiffs as designed and intended by the Defendant, without any change in its condition from the time it left the control of the Defendant until it was used by the Plaintiffs.

36.     The cooker, which was sold and delivered to Plaintiffs by Defendant and ultimately used by Plaintiffs, was, at the time of sale and delivery, in a defective condition and unreasonably dangerous to the ultimate user.

37.     The product was defective and unreasonably dangerous in that it failed to conform to the product design and specifications of other pressure cookers, where it failed to prevent the sudden and unexpected ejection of boiling hot liquids when used in accordance with the instructions provided.  Such defect(s) constituted a producing cause of Plaintiffs' injuries and damages.

38.     The product was defective and unreasonably dangerous because there was a lack of adequate warnings and notices that the product could inadvertently eject boiling hot liquids in a way not warned of or contemplated by the ordinary user of the product.  Such defect(s) constituted a producing cause of Plaintiffs' injuries and damages.

39.     The product was defective and unreasonably dangerous due to the hazard created by the ability of the lid to come off while its contents were under pressure and by the ability of the device to function with the lid only partially engaged.  Such defect(s) constituted a producing cause of Plaintiffs' injuries and damages.

40.     As a direct result of the defective condition of the cooker, Plaintiffs sustained the injuries and losses described herein.  Had the cooker not been designed, distributed, or sold by Defendant in such an unreasonably dangerous condition, Plaintiffs' injuries would not have

occurred.

## V.  CAUSE OF ACTION:  BREACH OF EXPRESS WARRANTY

41.     Plaintiffs incorporate the facts and allegations explained above as if fully set forth herein.

42.     Defendant is the designer, distributor, and/or seller of the cooker.  Defendant sold and shipped the cooker to Plaintiffs.

43.     Defendant expressly warranted that its product was safe for ordinary use when used in compliance with the instructions provided.

44.     Defendant's affirmations regarding the safety of its product formed a basis of the bargain for Plaintiffs, without which the Plaintiffs would not have purchased Defendant's product.

45.     The product did not conform to the Defendant's affirmations regarding the safety of its product.

46.     As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs sustained the injuries and losses described herein.

## VI. CAUSE OF ACTION:  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

47.     Plaintiffs incorporate the facts and allegations explained above as if fully set forth herein.

48.     Defendant is the designer, assembler, distributor, and/or seller of the cooker.

49.     Defendant sold and shipped the cooker to Plaintiffs.

50.     Defendant impliedly warranted that its product was merchantable, fit for the ordinary purpose for which it was sold or used, was of fair average quality so as to pass without objection in the trade, and conformed to Defendant's own affirmations regarding the cooker's safety features and overall safe condition.

51.     Defendant breached its implied warranty of merchantability, as the product did not conform to the Defendant's affirmations regarding the safety features and overall safe condition of the product, the product was not fit for the ordinary purpose for which it was sold or used and was not of fair average quality so as to pass without objection in the trade.

52.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs sustained the injuries and losses described herein.

## VII.  CAUSE OF ACTION:  BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

53.     Plaintiffs incorporate the facts and allegations explained above as if fully set forth herein.

54.     Defendant is the designer, distributor, and/or seller of the cooker.  Defendant sold and shipped the cooker to Plaintiffs.

55.     In selling its product to Plaintiffs, Defendant, through its agents, servants, employees, and apparent agents acting within the scope of their employment, authority, or apparent authority, made representations and promotions concerning the particular purpose to which Plaintiffs would put the product to use and knew or should have known of the particular purpose to which Plaintiffs would put the product to use.  Defendant impliedly warranted that the product would be fit for such particular purpose.

56.     Defendant breached its implied warranty of fitness for a particular purpose, as the product did not conform to the Defendant's affirmations regarding its product being fit for such particular purpose.  The cooker's malfunctioning safety features and overall unsafe condition rendered it unfit for that purpose.

57.     As a direct and proximate result of Defendant's breach of the implied warranty of

12

fitness for a particular purpose, Plaintiffs sustained the injuries and losses described herein.

      a.     They were caused to suffer physical pain and mental anguish;

      b.     They were caused to seek medical treatment and was prevented from going about her normal activities;

      c.     They were permanently injured;

      d.     They were caused to incur medical expenses to treat and cure their injuries;

      e.     They were caused to suffer mental anguish and emotional distress;

      f.     They were caused to be injured and damaged, all to their detriment; and

      g.     They were caused to miss work and lose wages during the course of their medical care and treatment and thereafter.

## VIII.  DAMAGES

58.    As a direct and proximate result of Defendant's conduct, Plaintiffs Laticia Thonsgaard and Jake Thonsgaard suffered the following injuries and damages:

      a.     Medical expenses in the past and future;

      b.     Physical pain and mental anguish in the past and future;

      c.     Disfigurement in the past and future;

      d.     Physical impairment in the past and future; and

      e.     Past lost wages and loss of future earning capacity.

## IX.  JURY DEMAND

59.    Plaintiffs demand a trial by jury.

## X.  PRAYER

60.    For the above reasons, Plaintiffs Laticia Thonsgaard and Jake Thonsgaard pray that Defendant be cited to appear and answer herein and that upon final trial, Plaintiffs have judgment against Defendant for the following:

      a.     Actual damages within the jurisdictional limits of the Court;

     b.       Pre-judgment and Post-judgment interest at the lawful rate;

     c.       Costs of suit; and

     d.       All such other and further relief to which Plaintiffs may show themselves justly entitled under law or in equity.

**WHEREFORE**, Plaintiffs request a trial by jury and judgment against the Defendants, jointly, separately and/or severally, in a sum to be determined by a struck jury, plus costs.  Plaintiffs further pray for all other relief, of either a legal or equitable nature, to which they may be justly entitled.

Respectfully Submitted,

THE LUKE LAW FIRM

/s/Robert R. Luke
Robert R. Luke SBN:  00789463
1201 Shepherd Drive
Houston, Texas 77007
713.457.6300 Office
713.621.5900 Facsimile
Robert@lukefirm.com
Legal@lukefirm.com